James I. Goski and Phyllis M. Goski v. Commissioner.
Goski v. Commissioner
Docket No. 5207-63.
United States Tax Court
T.C. Memo 1965-155; 1965 Tax Ct. Memo LEXIS 175; 24 T.C.M. (CCH) 828; T.C.M. (RIA) 65155; June 7, 1965
James I. Goski, and Phyllis M. Goski, pro se, Horatio Gardens, Box 61, Prairie View, Ill. Jay B. Kelly, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1961 in the amount of $150. The issue for decision is whether petitioners *176 are entitled to a deduction in the amount of $750, or any portion thereof, because a well located on property owned by them and used as a personal residence ceased to produce water on January 31, 1961. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife residing in Prairie View, Illinois, filed a joint income tax return for the calendar year 1961 with the district director of internal revenue at Chicago, Illinois. During the year 1961 petitioners were residing in a house located in Horatio Gardens, Prairie View, Illinois. Petitioners had purchased this property in 1946 for approximately $2,500 and between the date of purchase and 1961 had made some improvements to the house located on the property. At the time petitioners purchased the property the house located thereon was approximately 2 years old. The improvements on the property at the time petitioners purchased it included a dug water well which supplied the dwelling with water solely for household use. This well was approximately 20 feet deep. From the time petitioners purchased the property in July 1946 until January 30, 1961, they experienced no difficulty *177 with the well located on the property. On January 30, 1961, water began to come out rusty, oily, and disclored from the well, and petitioners consulted well diggers to find out what was the difficulty. A well digger suggested that petitioners continue to use the water from the well until it ran out completely, which it did on January 31, 1961. From January 31, 1961, until the date of the trial of this case, this well has produced no water. On February 1, 1961, petitioners entered into a contract with a well driller for "The drilling and casing of a 5 inch well complete to whatever depth is necessary to furnish a sufficient amount of water for ordinary home use, the cost of same to be, using Galvanized pipe per running foot $4.25 per ft." On February 2, 1961, petitioners obtained a permit which allowed them to proceed immediately with the drilling of the well because they were "out of water." The new water well on petitioners' property which was completed on February 16, 1961, was a 155-foot well, producing 50 gallons of water per minute with water 28 feet from top of the well. The cost to petitioners of having the well drilled was $658.75 and the pump installation cost was *178 $736.20, making a total cost of having the well drilled and the pump installed of $1,394.95. Petitioners' property is located approximately 12 miles southwest of Waukegan, Illinois, approximately 15 miles north of O'Hare International Airport, and approximately 8 miles west of Lake Michigan. The stipulated data contained in the official United States Department of Commerce publication of Climatological Data for the State of Illinois showing the maximum and minimum temperatures for each day of the month of January for the years 1955 through 1960 for the Weather Bureau Station at Waukegan, Illinois, together with the monthly average temperatures for each such year are incorporated in these findings by reference. Similarly, the stipulated data of climatological data for Illinois for January 1961 officially published by the United States Department of Commerce Weather Bureau is incorporated herein by this reference. The weather summary for January 1961 contained in these data shows that a period of unseasonably cold weather during the last 10 days of the month brought January temperature averages to about 2 to 6 degrees below normal. These data further show that in the central and *179 southeast portions of the State temperatures averaged 4 to 5 degrees below normal, but in the west, northwest, and northeast averaged about 3 degrees below normal. During the period January 20 through January 31, 1961, the lowest Midway temperature recorded was on January 25 at 2 degrees below zero. The lowest temperature recorded at Midway for January 29, 30, and 31, 1961, were 4, 8, and 17 degrees, respectively. Temperatures at petitioners' residence averaged 10 degrees colder than those at Midway. While petitioners had lived in their home at Horatio Gardens, Prairie View, Illinois, they had experienced colder weather than that in the latter part of January 1961 without their well being affected. Petitioners on their joint income tax return for the calendar year 1961 claimed a deduction of $750 with the following explanation: Loss of property 750.00 (Lost Well Due to Freezing - Cost of New Inst. 1600.00) Respondent in his notice of deficiency disallowed the claimed deduction which in the notice was designated under unallowable deductions as "Other deductions - Casualty loss" with the explanation that the amount of $750 claimed as a deduction was not allowable under sections *180 165, 167, and 263, or any other section of the Internal Revenue Code of 1954. Opinion The exact basis of petitioners' claim for the deduction of $750 for the "loss of property" is not clear either from the petition, petitioners' opening statement at the trial, or petitioners' brief. However, since the claimed loss was to petitioners' personal residence, petitioners have no apparent basis for a claim for a deductible loss other than a casualty loss under section 165(c) of the Internal Revenue Code of 1954. [1] Petitioners' references to the extremely cold weather in late January of 1961 and possible freezing of the well also indicate that petitioners are claiming a deduction for a casualty loss. *181 In order to be entitled to such a deduction, petitioners must show that they have sustained a loss arising from a casualty within the meaning of section 165(c)(3), and the amount of such loss. Casualty has been defined as including a sudden and unexpected event or an event due to unusual cause and as excluding progressive deterioration of property from usage. Ray Durden, 3 T.C. 1, 3 (1944). The amount of allowable deduction is measured by the difference between the value of the property immediately preceding the casualty and the value immediately thereafter limited by the taxpayer's basis therein. Ray Durden, supra. Petitioners in the instant case have failed to establish either that the ceasing of the 20-foot well on their property to produce water was due to a casualty or what difference, if any, existed in the value of their property immediately before the well ceased to produce water and immediately thereafter. While the evidence shows that the last 10 days in January 1961 were unusually cold, it also shows there had been colder weather in previous Januarys which had not affected petitioners' well. There is no evidence to show what degree of cold *182 would be expected to cause freezing in a 20-foot well or whether freezing of such a well would cause it to permanently cease to produce water as did petitioners' well. The fact that the newly drilled well had a 28-foot water level might be some indication that through natural long-range causes the water level on petitioners' property had gradually gone below 20 feet. At least there is no evidence to show that this was not the cause of petitioners' well ceasing to produce water. On the basis of the evidence in the instant case petitioners have failed to establish that the 20-foot well ceasing to produce water was a casualty within the meaning of section 165(c)(3). Even if petitioners had established that a casualty caused the well to cease to produce water, they have failed to show what amount, if any, of loss was sustained by such event. So far as the evidence shows a 20-foot well to furnish water to petitioners' house might have been so inadequate that any prospective purchaser would have considered a deeper well a necessary improvement to the property so that the value of the property with the 20-foot well producing water would be no greater than with it not producing water. At *183 least there is nothing in the evidence to show otherwise. The explanation given by the petitioner who testified at the trial with respect to the cause of the well ceasing to produce water was in answer to a question of what was the basis of the advice of the well digger that a new well was needed. This petitioner testified as follows: Well, he couldn't say exactly what had happened either. He said that he thought that it could be the extreme freezing weather, but he had advised us to have a new well dug, to get a new well. This petitioner explained the deduction of $750 as follows: * * * in our tax we claim $750 loss which the well digger said it would cost us to replace this dug well; a loss of $750 to replace the dug well, so we thought it reasonable and prudent to put in a new well and pay him a little more, * * * This testimony, together with the other evidence, is totally inadequate to establish that a casualty caused petitioners' 20-foot well to cease to produce water or the amount of loss sustained by petitioners because of this well ceasing to produce water. Richard A. Dow, 16 T.C. 1230 (1951). Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated. Sec. 165(c). Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (c) shall be limited to - * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. No loss described in this paragraph shall be allowed if, at the time of the filing of the return, such loss has been claimed for estate tax purposes in the estate tax return.↩